Jaynet A. MOORHEAD, Administratrix of the Estate of Catherine B. Baxter, Deceased, Appellant,

v.

CROZER CHESTER MEDICAL CENTER, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 15, 1997.

Filed Dec. 31, 1997.

Reargument Denied March 5, 1998.

---

Joseph M. Fioravanti, Media, for appellant.

R. Bruce Morrison, Philadelphia, for appellee.

Before CIRILLO, President Judge Emeritus, and SAYLOR and OLSZEWSKI, JJ.

SAYLOR, Judge:

Appellant, Jaynet A. Moorhead, administratrix of the estate of Catherine B. Baxter, deceased, appeals from the judgment entered against Appellee, Crozer Chester Medical Center, in this medical malpractice action. We affirm the judgment, although we do so for reasons which differ from those relied upon by the trial court.

Appellant's decedent, Catherine Baxter, was injured when she fell while a patient at Appellee's facility. Mrs. Baxter filed an action against Appellee, contending that her fall resulted from Appellee's negligence. Appellant was substituted as the plaintiff after Mrs. Baxter's death. Although the case was tried before a jury, the question of compensation for past medical expenses was reserved for the trial court. The jury returned a verdict in favor of Appellant, awarding the sum of $46,500.00 in non-economic damages, including pain and suffering.

Concerning past medical expenses, the agreed-upon facts are as follows [1]: The plaintiff's decedent was covered by Medicare and by a "Blue Cross 65" supplemental plan for which she had paid premiums. The fair and reasonable value of the medical care that Appellee furnished to the decedent after her fall was $108,668.31. The Medicare allowance for such care was $12,167.40, 80% of which was paid by Medicare and 20% of which was paid by Blue Cross 65. Pursuant to its voluntary participation in the Medicare

1. The parties have filed an agreed-upon statement of facts "pursuant to Pa.R.A.P.1925," which statement has been approved by the trial court. We note that it is Pa.R.A.P.1924 which provides that such a statement, if approved by the trial court, "shall then be certified to the appellate court as the record on appeal...."

program, Appellee accepted the Medicare allowance as payment in full. Appellee is not permitted to seek the remainder of the fair and reasonable cost of its services from Appellant or from any other source.

The question before the trial court was whether the correct measure of compensatory damages for medical expenses was the amount billed by the hospital or the amount received by the hospital as payment in full. Based on the stipulated facts, the trial court determined that Appellant's recovery for past medical expenses should be limited to $12,167.40, the amount allowed by Medicare and accepted by Appellee as payment in full. According to the trial court, case law assumes that the reasonable value of medical services equals the amount billed for those services, which in turn equals the amount that the plaintiff is contractually obligated to pay. The court reasoned that where the plaintiff is not obligated to pay the amount billed, it is not necessary to award that amount to the plaintiff in order to make the plaintiff whole. To the contrary, the court noted, doing so would allow the plaintiff to reap a windfall.

Accordingly, by order entered November 15, 1996, the trial court limited the amount of past medical expenses recoverable by Appellant to $12,167.40, the amount set by Medicare as payment in full. This amount was added to the jury verdict of $46,500.00 for a total verdict of $58,667.40. After the court awarded delay damages in the amount of $7,431.20, judgment was entered against Appellee in the amount of $66,098.60. This appeal followed.

On appeal, Appellant argues that the trial court's award of past medical expenses contravened the settled measure of compensatory damages and also violated the collateral source rule. Specifically, Appellant argues, as she did in the trial court, that under settled law a plaintiff is allowed to recover the fair and reasonable value of the medical care made necessary by the defendant's negligence—in this case, $108,668.31. According to Appellant, the total amount of the verdict should therefore be $155,168.31 ($108,668.31 plus $46,500.00, the amount of the jury verdict), plus delay damages.

Appellee argues that the amount of damages should equal but not exceed the loss to the decedent. In the present case, Appellee reasons, the amount of medical expenses actually incurred by or on behalf of the decedent was $12,167.40, the amount allowed by Medicare as payment in full. Appellee argues that to authorize a greater measure of damages would be to bestow a windfall upon Appellant. In Appellee's view, therefore, the total verdict should be $58,667.40 ($12,167.40 plus $46,500.00), plus delay damages.

■ In *Kashner v. Geisinger Clinic,* 432 Pa.Super. 361, 638 A.2d 980 (1994), the Superior Court summarized the principles by which the amount of medical expenses recoverable by the plaintiff is to be determined.

It is well-settled that a plaintiff in a personal injury action seeking damages for the cost of medical services provided to him as a result of a tortfeasor's wrongdoing is entitled to recover the reasonable value of those medical services. While we agree that the amount that was actually paid ... for ... medical services may be relevant in determining the reasonable value of those services, the trier of fact must look to a variety of other factors in making such a finding. Among those factors to be considered by the jury are the amount billed to the plaintiff, and the relative market value of those services.

Clearly, the amount actually paid for medical services does not alone determine the reasonable value of those medical services. Nor does it limit the finder of fact in making such a determination.

*Id.,* 432 Pa.Super. at 367, 638 A.2d at 983 (citations and footnotes deleted). The Superior Court found additional support for its observations in D. Dobbs, Handbook on the Law of Remedies § 8.1, at 543 (1973):

The measure of recovery is not the cost of services ... but their reasonable value.... **[R]ecovery does not depend on whether there is any bill at all,** and the tortfeasor is liable for the value of medical services even if they are given without charge, since it is their value and not their cost that counts.

*Id.,* 432 Pa.Super. at 368, 638 A.2d at 983, quoting Dobbs, *supra.* To similar effect is the Restatement (Second) of Torts, which the Superior Court also quoted with approval:

> The value of medical services made necessary by the tort can ordinarily be recovered **although they have created no liability or expense to [the] injured person,** as when a physician donates his services.

*Id.,* quoting Restatement (Second) Torts § 924 comment f (1979) (emphasis added).

■ When these principles are applied to the present case, it is apparent that the trial court erred in determining the measure of damages. The trial court's conclusion that "the reasonable value of medical services ... equal[s] the amount billed for the services which ... equal[s] the amount paid for those services" is not supported by the applicable case law. To the contrary, the amounts billed and paid for medical services are no more than factors to be considered in determining the reasonable value of such services.

In *Kashner,* the Superior Court determined that the trial court had erred in limiting the amount of medical expenses provable by the plaintiffs to the amounts paid by the state Department of Public Welfare (DPW). Accordingly, the court remanded the case for a new trial on damages so that the reasonable value of the medical services provided to the plaintiff-wife could be determined. Here, however, a remand is not necessary since the parties have already stipulated that the reasonable value of the medical services provided to Appellant's decedent was $108,668.31.

■ However, we must still determine whether Appellee is entitled to a setoff in the amount by which the reasonable value of the medical services exceeded the payment allowed by Medicare. We conclude that because Appellee was both tortfeasor and provider of the medical services in question, Appellee is entitled to such a setoff.

■ Where the tortfeasor itself makes a payment to the injured party, the tortfeasor's liability is reduced accordingly. *Kashner, supra;* Restatement (Second) of Torts § 920A(1). Such a contribution may take the form of benefits other than cash payments. Restatement (Second) of Torts § 920A comment a. In the present case, Appellee, the tortfeasor, provided benefits to Appellant's decedent in the form of medical care made necessary by its own negligence. In such a case, as the Superior Court noted in *Kashner,* "the amount of damages assessed against the [tortfeasor] should be reduced to the extent that the reasonable value of the medical services provided and billed by the [tortfeasor] exceeds the payment [by the third-party payor—in that case, DPW]." *Id.,* 432 Pa.Super. at 369 n. 7, 638 A.2d at 984 n. 7.

■ Such a result does not violate the collateral source rule.

> The collateral source rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong.

*Johnson v. Beane,* 541 Pa. 449, 456, 664 A.2d 96, 100 (1995). In the present case, the only payment from a collateral source was the $12,167.40 received from Medicare, *see Titchnell v. United States of America,* 681 F.2d 165 (3d Cir.1982), which Appellant is entitled to recover. The amount of the setoff allowed to Appellee ($96,500.91, the difference between the reasonable value of the medical services provided to the decedent and the payment from Medicare) represents the value of the medical care provided by Appellee itself and does not constitute a payment from a collateral source.

Therefore, in this case, the proper measure of damages for the medical services provided to Appellant's decedent as a result of the negligence of Appellee was $108,668.31, the agreed-upon fair and reasonable value of the decedent's medical care. After such damages are correctly measured, Appellee is entitled to a setoff or credit against its liability in the amount of $96,500.91 since Appellee, the tortfeasor, provided such services. When such setoff is applied, Appellee's ultimate liability for the decedent's medical expenses is $12,167.40. Since this is the sum

awarded by the trial court, we affirm the judgment entered against Appellee, while rejecting the rationale which led to such result.

Judgment affirmed.

OLSZEWSKI, J., files a Dissenting Opinion.

OLSZEWSKI, Judge, dissenting:

While the expression of the majority view provides a persuasive analysis and sound rationale, I am obliged to differ. I agree with my colleagues' insightful discussion of the appropriate measure of damages in this case. I disagree, however, with the conclusion that appellee is entitled to a setoff.

The majority correctly states the applicable law. "Where the tortfeasor itself makes a payment to the injured party, the tortfeasor's liability is reduced accordingly." Majority, at 455. Conversely, where a collateral source makes a contribution to the injured party, the tortfeasor's liability is not reduced. *Id.* Therefore, appellee is only entitled to a setoff if it made a contribution to appellant in excess of the contribution from Medicare and Blue Cross. ·*See id.* at 455.

The majority finds that by forgiving all appellant's reasonable medical costs in excess of the $12,167.40 payment from Medicare and Blue Cross, appellee made a $96,500.91 contribution to appellant. Appellee admits, however, that Medicare prohibits it from seeking "the remainder of the fair and reasonable cost of its services from Appellant or from any other source." *Id.* at *2.* Thus, appellee did not contribute anything to appellant that appellant had not already received from Medicare. This means that appellee itself has made no payment to the injured party in excess of Medicare's contribution. Accordingly, appellee is not entitled to a setoff. *Cf. Kashner v. Geisinger Clinic,* 432 Pa.Super. 361, 638 A.2d 980 (1994) (holding that a clinic was entitled to a setoff where it voluntarily forgave medical expenses pursuant to a charity program).

For the foregoing reasons, I respectfully dissent.